240 P.2d 545

## LUNSFORD v. TUCSON AVIATION CORP. et al.

### No. 5286.

Supreme Court of Arizona.

Feb. 4, 1952.

Rehearing Denied March 4, 1952.

278

Conner & Jones and James M. Murphy, all of Tucson, for appellant.

Darnell, Robertson & Holesapple and Charles D. McCarty, all of Tucson, for appellees.

UDALL, Chief Justice.

This appeal is by the plaintiff, Donald E. Lunsford, Jr., from a judgment of the lower court, entered upon the verdict, denying him compensatory damages for the alleged negligence of the defendants-appellees, Tucson Aviation Corporation, Paul W. Sullivan, as co-owner and general manager of the corporation, and Alexander B. Padilla, a flight instructor. The question presented is whether the doctrine of assumption of risk is applicable under the circumstances of this unique case?

Plaintiff was a student enrolled under the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 693 et seq., commonly called the "G.I. Bill", for a course of instruction in aviation with the defendants. At about 2:30 p. m. on June 27, 1947, the defendants provided for and directed the plaintiff to take a cross-country flight from Tucson, Arizona, to Las Vegas, Nevada, accompanied by and under the supervision of Padilla. After a routine check of the plane, plaintiff was directed by Padilla to take the controls but upon reaching an altitude of approximately 75 to 100 feet they hit violent downdrafts which caused the plane to lose altitude, and at the latter's request.

plaintiff immediately surrendered the controls to Padilla. The instructor attempted to bring the plane through this difficulty but it kept losing altitude and crashed into a clump of trees, seriously injuring the plaintiff.

There was one other plane scheduled by the defendants to make this cross-country flight. As soon as plaintiff and Padilla had cleared the runway, a Luskum monoplane took off with James Wiggins, the student pilot and Everett G. Sneed, the instructor. Wiggins and Sneed experienced some rough air at approximately 100 feet but due to the superior efficiency of their plane had no difficulty with it.

At the time of the accident the plaintiff, who was then twenty years of age, had a private pilot's license with 151 hours in the air and was receiving instruction for a commercial license but had not previously received any training in meteorology (the science of wind currents, etc.). Plaintiff testified that he had flown this particular plane a few times before but had never been instructed concerning its pecularities, i. e., that it was a poor performer at high altitudes, nor had he ever before flown in the heat of the day. He also testified that he had never experienced a violent downdraft as he had always flown in the cool of the day when the air currents were smoother.

Plaintiff and Padilla were flying a Culver V, which was being leased by the defendants, and was described as not a regular flight training plane. It was testified that it is a poor climber at high altitudes and that in the summer during the heat of the day in southern Arizona the air, because of its density, simulates high altitude.

The trial court allowed the defendants to amend their answer over plaintiff's vigorous objection after both sides had rested, to include the defense of assumption of risk, and the court then gave the instruction complained of on this appeal, viz.: "You are further instructed that if the plaintiff, Donald E. Lunsford, Jr., knew or should have known of the existence of the dangers incident to the flight or which might possibly be encountered during the flight, and was able to make an intelligent choice as to whether he should make the flight or abandon the same and avoid such hazards, and if you find that, possessed with such knowledge and choice he continued said flight and was injured as a result of such hazards, he is deemed to have assumed the risks necessarily incident thereto, and cannot recover from the defendants."

 This is a case of first impression in this state and counsel have only cited two cases from other jurisdictions that have been faced with a similar problem. The defendants for the purpose of this appeal concede that a training school owes to its students the same standard of care as is owed by a common carrier by air towards its passengers. This is stated in 6 Am.Jur., Aviation, Sec. 51, as follows:

"In accordance with the rule applying generally to common carriers of passengers for hire, it is the duty of a common carrier by aircraft to exercise with respect to passengers *the highest degree of care consistent with the practical operation of the plane*. It must use such degree of care not only with respect to the operation of the plane, but also with respect to its equipment, its maintenance, and the adjustment of all its parts. The duty and degree of care required of a common carrier of passengers by airplane toward a passenger carried gratuitously are the same as are required toward passengers for compensation. Therefore, if one is lawfully a passenger, it is not material whether he did or did not pay his fare. (Emp. sup.)

"The law does not require airplane companies to exercise all the care, skill, and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible perils. * * *"

Defendants, although admitting the above to be the law, contend that plaintiff assumed the risk and relies upon a quotation found in 6 Am.Jur., Aviation, Sec. 56: "* * * So also, one riding in a plane assumes the risk that storms may be encountered and that the plane of necessity must be brought to earth under conditions of weather, lights, and landing field that involve unusual risk and dangers in landing, provided the meeting of the risk is not in any way due to the negligence of the carrier. *But the principle only applies to sudden and unavoidable storms and weather conditions. In other words, storms which can be expected and avoided, and the extent of which can be calculated, do not come within the meaning of the rule*." (Emp. sup.)

See, also, 83 A.L.R. 372, and 99 A.L.R. 193. It will be noted that the italicized portion of the above text (which incidentally was not included in defendants' quote) limits the application of the rule to weather conditions that cannot be expected, that are sudden and unavoidable. The testimony of defendants Sullivan and Padilla show that downdrafts in the summertime are not unusual or unexpected but are usual in southern Arizona in the daytime and a good pilot always expects them and must be prepared to guard against them.

A further limitation of the application of the doctrine of assumption of risk is laid down in 65 C.J.S., Negligence, § 174: "Also, in order to invoke the doctrine of assumed or incurred risk, it is essential that the risk or danger shall have been known to, and appreciated by, plaintiff or that it shall have been so obvious that he must be taken to have known and comprehended it. * * * he does not assume obscure and unknown risks, which are not naturally incident thereto and which, in the existing conditions, would not be reasonably observed and appreciated; * * *."

We believe that the record here conclusively shows the downdraft was an obscure and unknown risk to this plaintiff and was not so obvious in view of his training as to have been known and appreciated by him. Defendants practically concede this when they admit by their answer and in their brief that plaintiff was an inexperienced pilot with no training in meteorology.

In Weadock v. Eagle Indemnity Co., La.App., 15 So.2d 132, 139, a case with very similar facts, the defense of assumption of risk was raised and disposed of by that court which said: "* * *. Therefore, when Lane directed Weadock to make the routine flight which ended in near tragedy, Weadock assumed, as he had a right to do, that conditions were favorable for such a flight." See also, Kasanof v. Embry-Riddle Co., 157 Fla. 677, 26 So.2d 889.

We agree with the defendants that the general rules governing tort liability and negligence are applicable to airplane accident cases. But we hold that under the facts of this case the challenged instruction was erroneous as the doctrine of assumption of risk was not applicable.

The judgment is reversed with directions to grant plaintiff a new trial.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concurring.